Okay, looks like we're ready. Thank you, Your Honor. May it please the Court, I am Jonathan Levy with the United States Department of Justice, representing HUD in this matter. The material facts in this case are indistinguishable from the material facts in this Court's recent Fort Belknap case, and we believe that both the holding and reasoning in Fort Belknap apply here and require reversal. You think the facts are indistinguishable? The material facts, Your Honor. The material facts are, first, that in each case the tribe received funds under the relevant statute, which is called NAHASDA, based on a statistic called FCAS, that in each case HUD subsequently determined that the FCAS in issue may have been inaccurate, and thereafter embarked on an extensive administrative process with the tribe to try to determine the proper FCAS values, and that in each case, after that extended process, HUD determined that the original FCAS had been inaccurate and that, therefore, the NAHASDA grant amount had been too high, and proceeded to recover the overpayment by means of offset from subsequent NAHASDA grants. Those are the material facts in each case, and they are identical. We also believe that the district court's ruling is inconsistent with congressional intent, as indicated in more recent amendments to NAHASDA, and Congress made clear in that amendment that it did not believe that a formal evidentiary hearing was required under these particular circumstances. The burden of proof in this case was on Crow to show that it was entitled under law to a formal evidentiary hearing, which it did not receive, and it has not met that burden here. Can you explain another case that's directly on point involving the same statute, and that's Lume Tribe in the U.S. Court of Claims? It went through an extensive analysis, including addressing the common law option, federal common law option, and its conclusion was that your authority was 4152, I think that's, sorry, 4165, gets you all the way, apparently would get you all the way home in this case, because while there's a hearing option, it has to be requested by the tribe. So why are you, and says explicitly, Lume Tribe says explicitly that you don't resort to the common law when you have an actual congressional statute that gives you the authority you want. So why isn't that your approach? Because Fort Belknap. You running around seeking our dictum in Belknap. Seeking out dicta. Well, I don't think we are relying on dicta in Fort Belknap, with respect, Your Honor. Fort Belknap is obviously a decision of this Court rather than Lume, which is a different court. I understand the difference. I do understand the difference. I apologize, Your Honor. What it said is that was about 4161 and jurisdiction. It was about 4161 and jurisdiction, but 4161 is clearly at play here, at least the district court and Crow here make that an issue. But you don't. I mean, your position is that there was never a finding of substantial noncompliance. That's correct, and that Fort Belknap makes that quite clear. Right. But why isn't it? To get back to Judge Fischer's point, that's all Fort Belknap really needed to do, and why isn't the part of Fort Belknap you're relying upon just dictum? The part that we are relying upon is the statement about the availability of the common law remedy here, and Fort Belknap says that that's what HUD is doing. HUD is relying on a common law remedy, and it has a common law remedy. Judge Fischer's question is why isn't that dictum? I apologize, Your Honor. I think it's a close question as to whether it's dicta or not. I think it's not dicta because of. . . We can argue back and forth about what we say is dictum. Did Belknap address 4165? It did not explicitly address 4165. Did it address Lume Tribe? Did. . . I'm sorry. Did it address Lume Tribe's analysis? Did it address Lume Tribe's analysis? Yes. No, it did not. And particularly the point that Lume Tribe makes where you have a specific congressional statute that would appear to cover what you're trying to do, that would over. . . or the common law would give way to it. It did not address that, and let me raise two points. The first is that the whole approach of Lume Tribe is inconsistent with the approach of Fort Belknap. Lume Tribe says section 4165 applies, and therefore the common law can't possibly apply, but Fort Belknap says the common law does apply. All right. So those. . . Let me get you beyond that and get back to Judge Fischer's point or what I perceive to be his point, which is Lume Tribe, because I also found the reasoning of Lume Tribe to be very persuasive. Can you point out an error in analysis of any of Lume Tribe, address Lume Tribe's analysis with regard to the application of 4165, and tell me where you think that court went astray? I think the court went astray by treating 4165 not on its language, but as a general broad statute that somehow encompasses all review and audit that has anything to do with the NAJASDA statute. And I also think that that mistake is a mistake that is sort of presaged, if you will, in Fort Belknap, which talks about, Fort Belknap talks about the difference between expenditures of NAJASDA funds by tribe and receipt of NAJASDA funds by the tribe, and talks about how those two things are very different. And so what I'd like to do, with your permission, is walk you through exactly what section 4165 says and demonstrate that it is not the broad-ranging statute that Lume says, but is instead error. Counsel, before you do that, even if we agree that Lume discusses that statute in very broad terms, and perhaps overly broad terms, why wouldn't it be applicable in this case? Because it seems to me, getting back to your very first question about the, or very first point about the facts being indistinguishable here from Fort Belknap, the facts we have here in this case involved, first of all, the report by the Inspector General.  It was expressly not an audit. Which is not? Expressly not an audit. It says that it wasn't an audit. Then there were a couple of letters from HUD that went unresponded to. But then there was an on-site inspection and an adjustment of the amount due. So even if we don't want to discuss about or decide, which I think we wouldn't have to, whether those earlier communications, what you called an extended administrative process, triggered 4165, why wasn't it triggered at that point of the on-site inspection where the number, the amount of recruitment was adjusted? Let me just address one thing, a minor point that you said, which is that you believe that this involved an adjustment of the grant amount. It did not. The remedy here was identical to the remedy in Fort Belknap in the sense that. I appreciate that. Okay. I know that. So the answer to the question is that the site. So the question is, why doesn't the site visit review constitute a review under Section 4165? Right. And the answer to that question is, if you look at the language of 4165, subsection A refers to audits under Chapter 75 of Title 31, and I assume you agree that this isn't an audit and it doesn't meet any of those requirements, so it doesn't fall under that category. So that leaves open the question of whether it falls under subsection B, additional reviews and audits. Okay. So it refers to audits or reviews of a recipient in order to determine whether the recipient has carried out eligible activities in a timely manner. So the question is, did the site review at issue here do that? Sorry, you're citing eligible activities in a timely manner. That's one. That's one, yes. Okay. And are you going to get to two? Sure. Okay, then. I just didn't want to skip the subsection. I don't know which one this Court is focusing on here. I don't think any of these applies, and I would like to point out that the express purpose of the review, the on-site review, it was done at the request of the trial, excuse me, of the tribe. That's on page ER-57. Yes. And ER-58 says that the parties agreed to the site visit to review the records of units in the four projects, determine the appropriate unit counts, and recalculate the overfunding based on those revised unit counts. Why doesn't that trigger a 4165? Well, I'm going through why it's not. It's not reviewing the tribes, whether the tribe did eligible activities in a timely manner. It has nothing to do with that. It's not reviewing whether the tribe engaged in eligible, carried out eligible activities and certification in accordance with this chapter and other applicable laws. It's not for the purpose of determining whether the tribe has a continuing capacity to carry out eligible activities Wait, wait. Has carried out eligible activities and certification. Yes, Your Honor. What falls within that? Why doesn't what happened here fall within eligible activities? Eligible activities are discussed in a particular statute. I believe it is section 4132, and they are defined. And essentially, again, they are the way that the tribe expends the funds in order to create housing opportunities. That's a bit of an overstatement, but that's what they are. They are all listed in 4132, and they are not reporting requirements. They are things that the tribe does to create housing opportunities. So those are eligible activities. And then similarly, the certifications are a term of art involving the statute here, and there is no claim that there are any certifications here involving the number of FCAS units. So that's why those specific terms do not apply. Going on down the list of section 4165, is this an auditor review in order to determine whether the recipient is in compliance with its Indian housing plan? There is no allegation here that it is such an auditor review or that it had anything to do with Crow's Indian housing plan. And then the final type of auditor review that comes under section 4165 is one conducted to verify the accuracy of under section 4164. And again, you can look at 4164 to see what information is contained in those performance reports, but FCAS count is not included, and there is no allegation in this case otherwise. So again, if you parse back finding or conclusion that the initial discovery of the problems of Crow Housing's noncompliance, FCAS's noncompliance, really stem from the monitoring and audits which do arise under 4165. I think it is Crow's burden to identify what audit they're talking about. And it's not the on-site visit. It can't be the on-site visit because I've just gone through the whole list of the description of every audit and review under 61 under 41, excuse me, 65, and the on-site visit doesn't qualify. And so the question is, if there is some other audit or review that does qualify, where is it? What is it? And it was and remains Crow's burden to point to that audit or review, and it has not done so. I have a different question, counsel. If 4165 had been triggered, if one of those subparts had been triggered and the on-site review or the correspondence or some combination thereof was an audit or a review, would you agree that the tribe would have been entitled to a hearing? It would have been entitled to a hearing, but only if it had timely requested a hearing under the relevant regulation, because, again, the statute itself, section 41. The answer is yes? I think the answer is yes. The answer is yes, if. No, no. Let me be clear. The answer is yes, if they had done something which they did not do. So you didn't let me finish my question, and my question is, did they ever request a hearing? No. They did not request a formal evidentiary hearing. They did not invoke section 4165, and they did not invoke the regulation, which is 1000.532. My question wasn't whether they ever requested a formal evidentiary hearing. My question is whether they ever requested any kind of hearing. They requested an appeal, and they received an appeal. There are paper hearings here, which is why I'm giving a longer answer than yes or no. Paper hearing? A paper hearing? Yes, in the sense that they were given notice and the opportunity to be heard repeatedly over the course of the administrative proceedings here. Okay. I'm not trying to ask a tricky question, truly. They did not ask for a hearing. Thank you. They did not ask for a hearing. And under and assuming section 4165 did apply, which we think it does not, there is nothing in the statute about a hearing. So they're only hooked to get a hearing under section 4165 is the regulation, and the regulation does not say you get a hearing. What it says is if the recipient may request within 30 days of notice of the act, meaning the act by HUD being challenged, a hearing in accordance with section 1000.540, and that never took place. Thank you. I have another question, counsel, just briefly, about this notion that HUD could have pursued a common law remedy. Yes. What's your authority for the implied proposition that the tribe would not have been titled to a hearing had you pursued that option? Well, with respect, Your Honor, the question is what is the authority that a hearing would be required. The case law on that, and I believe that's the Wirtz case and others, state that there is no specific requirement of process, meaning that the government doesn't need to initiate its own lawsuit. So what's your authority that you're relying on, counsel? I believe the cases are United States v. Wirtz and United States v. Muncie Trust Company. And to a certain extent, I would cite Fort Belknap, because it says that the government that HUD used this process and found no requirement, no applicable statute that would require a hearing. I'd like to reserve the rest of my time for rebuttal. Court. Thank you, Your Honor. Good morning. May it please the Court. My name is Dennis Baradon-Wock. I am attorney for the plaintiff appellees in this case, Crow Tribal Housing Authority. As already noted by this Court, the common law remedy that was discussed in Fort Belknap constitutes dicta. As such, it should not be relied on for any precedential value in this case. Beyond that, the dicta was issued when this Court had no jurisdiction. And as has been noted in previous jurisprudence, decisions issued by courts with no jurisdiction constitute nullity. But even if 4165 applies, did Crow Tribal Housing ever ask for a hearing in this case? The Crow Tribal Housing Authority was directed to request a hearing under a different regulation that didn't apply in this case. It was more of a confusing. But regardless of what authority was factually, did Crow Tribal Housing ever ask for a hearing? The Crow Tribal Housing Authority, the initial attorney who brought this case, Urban Bernow-Wock, wrote a letter to HUD and essentially said, you know, I'm not sure what process I'm supposed to use in this case, but whatever that process is, I disagree with this, and we would like to appeal the decision of HUD. So what letter are you referring to? Just to make sure we're correct. Forgive me for interrupting. I just want to make sure we've got this. Look through my facts here, Your Honor. One that refers to an appeal. I believe it is. But let me just double-check here. It was from 2003. I can go back to the brief and see. Okay. Is it the response that Crow Tribal Housing provided after the third letter? Was that in 2003? November 2003? Yes, I believe it was. So you're saying that that letter somehow should be construed as a request for a hearing? Is that the argument? It was the extent of, yes, that is the argument. That is the extent of the letter. That is the extent of what, under the regulations in force at the time and the attorney handling the situation, that was the extent of the request for appeal and hearing that was made. However, as the dispute went on and the Crow Tribe was denied the opportunity for a hearing, they were forced to bring suit, and federal district court in effect requested the hearing there. So I'm looking at the November 2003 letter. Do you happen to have it in front of you? Is it in the brief? November 13, 2003. I may. The one that says apparently you've written two previous letters. Is that the letter you mean? Let me check my excerpt of the record here. ER 4748, is that the letter you're talking about? That's the one I'm looking at, so I just want to be sure that that's what you intend. We're all looking at it. Okay. I apologize, Your Honor. I can't find it in the documents that I have before me, so I really can't verify for certain that that is the one. Should we read it to you? Oh, this might be it. No, this one just has the audit report. It says, I will make the substantive argument against HUD's position and in favor of the Crow Tribe. However, there are three things I would like from HUD, and these are, one, a copy of the September 21, 2001 letter, two, a copy of the January 2, 2002 letter, and three, any written agreement entered into by the Crow Tribe to allow the deductions of $132,000 to repay the above-referenced amount, whether or not there was such an agreement, basically. I'm summarizing the end there. Okay. And that's the end of the letter. Unfortunately, there are not copies of these documents within the Crow Tribal, is what it says, and that's the end of that letter. That may not be it then. You must be talking about the reconsideration request, ER-70? Yes. If it is that the one? ANHA disagrees with your decision, would like to exercise its right to appeal. Is that it? Yes. And you're saying that the request for a hearing can be construed in this letter? Yes, up until the point where the Crow Tribal Housing Authority actually has to bring suit. So just for the record, that's a November 17, 2005 letter. Okay. That's what Judge Wynn's referring to now, I believe, that ER-70. November 17, 2005. We're looking at the same document. 2005. Okay. Okay. Thank you, counsel. Apologize. So I guess the main issues that I believe are involved in this case, that are involved in this case, are that Fort Belknap is dicta for all intents and purposes of anything beyond its decision to dismiss. Fort Belknap is distinguishable easily, even if it were not dicta. And 4161, 4165, NAHASDA itself, the statutes that NAHASDA is based on, the Community Development Block Grant from 1974, the NAHASDA Act borrowed provisions directly out of that, and these were reviewed in the Kansas City and City of Boston cases. And in both cases, similar to here, HUD was attempting to recapture or affect block grant awards without providing a notice or opportunity for a hearing. And the courts there analyzed the provisions in light of the entire act. And this created a rule of construction. Counsel, I think if we look at the entire act and try to harmonize it, it can be read a couple of different ways. And I'm really concerned about talking about 4165 being a catch-all, because it seems to me that there are different circumstances that we might find ourselves in or that HUD might find itself in. I mean, clearly HUD has to administer these funds, and there's certainly a congressional directive that, because the way this is structured, if one tribe receives too much, another tribe has received too little. And there's an indication that any kinds of errors need to be corrected expeditiously. So there could be circumstances where, and maybe this is one of them, where the error comes to light because of an audit, because the tribe's files have been gone through and so forth, and there's room for disagreement. But what about a circumstance where HUD goofs and makes a mistake, and in their calculation they say one plus one equals three, and the check has just gone out the door, and it hasn't been, maybe it hasn't even been received, much less spent. But what is there to say that HUD shouldn't be able to correct its own mistake, if it's truly HUD's mistake? If it's truly as simple as Your Honor is talking about, one plus one equals three, which is a simple mathematical equation, I believe that there would still at least require proper notice, and it would be, what Your Honor is talking about, I would just agree that's probably, I don't know what the remedy would be in that case. But I know that here, it's not. Here's the problem, though. Here's the problem. There's different kinds of mistakes. And the problem is that if HUD made that kind of mistake and it was truly HUD's error, and the tribe hadn't been prejudiced, the problem is that with your position, I think you're suggesting that a tribe would always have to have notice and an opportunity to have a full hearing, and that means delay. And to that extent, that's contrary to congressional intent, it seems to me. So what's the answer to that? Well, there is a difference between the data errors that Your Honor is talking about and that HUD has kind of characterized this case as, and what's going on here, which is there is a genuine dispute under the regulations at the time that the units that the Crow Tribal Housing Authority was counting were not eligible to be counted. And HUD has maintained that, you know, we just overpaid and we determined unilaterally that they weren't eligible, but these are units that were still owned, operated, and maintained, and the housing authority still had the legal right to do so. They hadn't been paid off by the tenant. There was a mutual homeownership agreement between the tenant and the housing authority that required payoff before conveyance. As such, though they were beyond the statutory 25 years, there was nothing preventing them from being counted. At the time HUD wrote what I'm going to call the first couple of letters, there hadn't been communication back from the tribe. I think that a record is quite clear on that point. And HUD was looking at its own data and realizing that some of those units had been on the books for more than 25 years, I'm paraphrasing. But by the time the HUD came out and did an on-site review and really went through several hundred files, it seems to me that's a different picture. And I think you have a much stronger argument that that's a 4165 situation. Yeah, and when HUD came out to do their monitoring review, it was a compliance activity, which is covered by 4165. Which subdivision of 4165 triggers the right to a hearing or makes that on-site visit something that qualifies as an audit or review under 4165, please? Okay. That would be. I'm sorry, Your Honor. I've taken very general notes, and I cite 4165 often and not the exact provision. All right. So I know that I have it, but that's someplace. Well, you heard Counsel for HUD go through the specific provisions that would apply. Did any of those that he cited as not applicable ring false to you? Compliance with the HOSDA is one of the things that we do. It's one of the purposes of the monitoring review under 4165. That's kind of an unfair question to ask you to remember. Let me just identify the ones. Any audit or review, that's what you're saying the on-site review was, right? Yes. Okay. And so to determine whether you've carried out eligible activities in a timely manner, that wouldn't apply. I would have to hear the rest of it before I could answer that accurately. Okay. Eligible activities, which Counsel says is a term of art, refers to 4132. And certification, in accordance with this chapter and other applicable law. And those certification was? The certification, I believe, is that – let's see. 4161A2. No, that's not it. I think Judge Fischer is going through the provisions of 4165A. And there's these various things, eligible activities in a timely manner, eligible activities and certifications in accordance with this chapter, a continuing capacity to carry out eligible activities in a timely manner, and then finally that the tribe is in compliance with the Indian housing plan of the recipient. Those are the factors that Counsel for HUD went through. And he says, well, none of those factors really apply in this case. So, therefore, 4165 is not the statutory basis for HUD's action in this case. Well, I believe under 4165 was the first one, compliance with our eligible activities, compliance with eligible activities under NAHASDA. One of the things that's required, I believe, under – well, I don't know if that is eligible activities. I was going to say that the tribe has a – or the Housing Authority has a duty to report its progress or compliance in an annual performance report, which I believe would be implicated by compliance with eligible activities under NAHASDA. And I believe as the statute was originally written or initially – I have a copy of it. You're saying maybe a timely manner would be applicable? Yes. Okay. And just to be sure, subject in B, which is what Counsel also addressed, was accuracy of information contained in any performance report under Section 4164. You're not invoking that? That's the one I was thinking of, actually, yes. Who are you thinking of that? B? 4165, yeah. Okay. So, all right. Okay. So Congress has occupied the field. And the statutes, much of the statutes relied upon by HUD in their opening brief and their reply brief can be misleading because they have changed over the years. But the ones that were in effect at the time of this dispute were significantly amended in, I believe it was 2007 or 2008 with the inclusion of the home and the Native Hawaiian to the Native American housing assistance. And at the time of this dispute when it arose, the regulations read that HUD could not recover or take back funds that had been spent on eligible housing activities. Was there any allegation that that provision had been triggered, any allegation that Crow Tribal had spent the funds? From HUD, you mean? Or from Crow Tribe? I think the district court, I'm not trying to be clever, I think the district court found that that was not triggered, that there was no allegation that that had been the case there. Oh, well. No showing, I should say. Well, okay. I know that the Crow Tribe has always disputed that these funds were not used in accordance with the law and not used, or the FICUS units, or the challenged units under the FCAS were not eligible to be counted. Those are disputes that HUD or Crow Tribal Housing Authorities always maintained. Since NAHASDA is so comprehensive and sufficient, as the district court correctly noted, to meet the needs of HUD in addressing compliance and review and sanction-type activities, the fact that HUD has refused to label an activity substantially noncompliant to evade the statute should not be allowed and is not allowed and cannot be said to the federal common law right that existed prior to NAHASDA and cannot be said to apply now when Congress has already spoken to those direct issues. I would just like to end with, we are asking that this court affirm the lower court's finding a ruling that HUD acted arbitrarily and capriciously when it summarily took $1.8 million, or found $1.8 million of funds were subject to recapture and removed eligible units from the FCAS inventory of the Crow Tribal Housing Authority, thereby reducing its grant amount overall and then also recovering from future years without first providing it an opportunity for a hearing and proper notice. Thank you, Counsel. Thank you. Is there any rebuttal? Thank you, Your Honor. There was an extensive amount of process here, and I think that bears repeating in terms of the tribe had ample opportunity to make whatever claims it wanted to about the various units and the FCAS counts. And indeed, it does have the ability to get judicial review of HUD's decision and to have a court look at that issue. So I think the amount of process has been clearly adequate here. In response to your question, Your Honor, the district court did state, quote, the record is not clear, unquote, with respect to whether Crow had spent the money at issue. That's at ER 18. And I also want to make clear that, again, there was no request for a hearing here. What appears on page ER 70 is a discussion of a request for rehearing and or appeal, and it invokes specific regulatory provisions, 1000.118 and 1000.336, both of which envision a paper rehearing process or a paper appeal process. So that can't possibly constitute a request for the kind of hearing that they claim they are entitled to hear. What's your comment on counsel's invocation of the timely reporting or carrying out their activities in a timely manner? Was there any issue open on the table on this on-site review about their having replied timely or furnished timely information? Wouldn't that be the nature of their failure to advise HUD of these changes of ownership? No. Whether the advising HUD of these changes is not an eligible activity. So whether or not there was a timeliness issue, it's not an eligible activity. That's the key point. And, again, eligible activity is a term of art. It's 4132. And you can go through 4132, and you will see that giving this type of information to HUD or correcting this type of information from HUD is not an eligible activity. So for that reason, it doesn't fall within the plain language. And your position is 4164 also does not enumerate this situation? Anything at issue here is being under 4164. That's correct. And I believe that Crow's brief discusses the fact that it was specifically not included and that it's in a separate form. 4161 has to do with a certain kind of report. I believe it's called a performance report. And HUD intentionally took this FCAS information out of that report. It's not included in that report. It's included in these formula response forms, which is a different document, and is not discussed in the statute there. Counsel, just quickly, the district court also said that the parties don't dispute, that HUD proceeded pursuant to 4165. I take it that was disputed in the trial court, just for the record? For the record, that was disputed in the trial court. And I can give you a few citations there. I actually have several of them. I just wanted to make sure that it's not a trick question. I think it's an error. Yes. In the briefing before the trial court, HUD specifically said section 4165 does not apply, and it said it repeatedly. So I think that is just a mistake. Okay. Good. Thank you so much for your argument. Thank you, Your Honor. Interesting case. That was, indeed, the last case of the day, so we'll stand and recess until tomorrow. Thank you. We'll be off record. Adjourned.
judges: Fisher, Christen, Nguyen